PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CFA INSTITUTE,

*Plaintiff-Appellee,*

v.

INSTITUTE OF CHARTERED FINANCIAL
ANALYSTS OF INDIA,

*Defendant-Appellant.*

No. 07-1970

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, Chief District Judge.
(3:98-cv-00417)

Argued: October 30, 2008

Decided: January 9, 2009

Before WILLIAMS, Chief Judge, and
NIEMEYER and KING, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Chief Judge Williams and Judge Niemeyer joined.

**ARGUED**: Robert Phillip Charrow, GREENBERG TRAURIG, Washington, D.C., for Appellant. Stephen Patrick Demm, HUNTON & WILLIAMS, Richmond, Virginia, for

Appellee. **ON BRIEF**: G. Roxanne Elings, David Saenz, Natalia McNamara, GREENBERG TRAURIG, L.L.P., New York, New York, for Appellant. W. Jeffery Edwards, William H. Wright, Jr., HUNTON & WILLIAMS, Richmond, Virginia, for Appellee.

## OPINION

KING, Circuit Judge:

The Institute of Chartered Financial Analysts of India ("ICFAI") appeals from the district court's September 2007 reinstatement of a 1998 default judgment in favor of the plaintiff, the CFA Institute.[1] By its ruling, the court determined that it possessed personal jurisdiction over ICFAI under Federal Rule of Civil Procedure 4(k)(2). On appeal, ICFAI contends that the court erred in its application of Rule 4(k)(2) and lacked personal jurisdiction in these proceedings. As explained below, we conclude that it was unnecessary for the court to reach and address Rule 4(k)(2), because it possessed jurisdiction over ICFAI under Virginia's long-arm statute. We thus affirm the judgment.

I.

At the outset, we identify and briefly explain the three rulings at issue in this appeal. The first is the October 9, 1998

---

[1]There were initially two plaintiffs in these proceedings, the Institute of Chartered Financial Analysts ("ICFA") and the Association for Investment Management and Research ("AIMR"). AIMR is a closely held Virginia corporation, which, in 1990, acquired substantially all the assets and liabilities of ICFA. Following a series of mergers, ICFA ceased to exist, and AIMR changed its corporate name to the CFA Institute. In February 2007, the district court substituted the CFA Institute as the sole plaintiff in this litigation, in the place and stead of ICFA and AIMR. For convenience, we refer to the CFA Institute as if it were the sole plaintiff during the entire course of the litigation.

default judgment entered in favor of the CFA Institute and against ICFAI, premised on the existence of personal jurisdiction over ICFAI under the Virginia long-arm statute. That ruling is comprised of a set of findings of fact and conclusions of law (the "1998 Opinion"), and an order entering default judgment (the "1998 Order"). *See Inst. of Chartered Fin. Analysts v. Inst. of Chartered Fin. Analysts of India*, No. 3:98-cv-00417 (E.D. Va. Oct. 9, 1998).[2] By the second ruling, issued on May 8, 2007, the district court vacated the 1998 Order on the ground that it lacked personal jurisdiction over ICFAI under Virginia's long-arm statute when it entered the default judgment in 1998. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, No. 3:98-cv-00417 (E.D. Va. May 8, 2007) (the "Relief Order"). Finally, by the third ruling, made on September 4, 2007, the court reinstated the 1998 Order. That ruling is comprised of a memorandum opinion (the "Reinstatement Opinion") and an order (the "Reinstatement Order"). *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, No. 3:98-cv-00417 (E.D. Va. Sept. 4, 2007).[3] In the Reinstatement Opinion, the court explained that, although it lacked personal jurisdiction over ICFAI under Virginia's long-arm statute, it possessed such jurisdiction under Rule 4(k)(2).

## A.

Turning to the pertinent facts of this case, the CFA Institute is a non-profit association based in Charlottesville, Virginia.[4] It was founded in 1959 "for the purposes of administering a

---

[2]The 1998 Opinion is found at J.A. 283-306, and the 1998 Order is found at J.A. 307-11. (Citations herein to "J.A. ___" refer to the Joint Appendix filed by the parties in this appeal.)

[3]The Reinstatement Opinion is found at J.A. 493-96, and the Reinstatement Order is found at J.A. 492.

[4]The facts spelled out herein are largely drawn from the Complaint and the 1998 Opinion. The continued viability of the findings of fact in the 1998 Opinion is discussed *infra* at note 16.

unique and intensive program of specialized study and testing in the field of financial analysis and [conferring] upon qualifying candidates the right to use a charter reflecting membership" (the "CFA program"). 1998 Opinion 2. The CFA Institute owns and uses the trademark "Chartered Financial Analyst" (the "CFA mark").[5] ICFAI, established in 1984, is an Indian corporation headquartered in Hyderabad, India. Its purpose is the "study of corporate finance, financial services and financial analysis" in India. *Id.* at 7. The CFA Institute and ICFAI are separate business entities.

The parties' underlying relationship began in about 1984, when ICFAI's founder, N.J. Yasaswy, travelled to Charlottesville and approached CFA Institute officials about establishing a CFA program in India.[6] Although nothing was apparently agreed upon during the Charlottesville meeting, CFA Institute representatives travelled to India in August 1985, and a business agreement was then reached (the "License Agreement"). Pursuant thereto, the CFA Institute authorized ICFAI to establish a CFA program in India. In an apparent effort to reflect this new relationship, ICFAI changed its corporate name from the "Institute of *Certified* Financial Analysts of India" to the "Institute of *Chartered* Financial Analysts of India."

ICFAI representatives visited the CFA Institute in Virginia on at least one additional occasion, when, in 1987, Yasaswy and another ICFAI official attended a CFA Institute board

---

[5]The Patent and Trademark Office issued a trademark to the CFA Institute in 1972. According to the district court, the CFA mark signifies "an acceptable level of competency in the investment management profession by government bodies and regulatory agencies in the United States and worldwide." 1998 Opinion 5.

[6]In the 1998 Opinion, the district court stated that Yasaswy's initial visit to the CFA Institute in Virginia occurred in 1985. In the Reinstatement Opinion, the court referenced the meeting as occurring in 1984. This apparent discrepancy is not pertinent to the disposition of this appeal.

meeting in Virginia as "special guests of honour." J.A. 260.[7] Furthermore, in November 1994, ICFAI's executive director, Subhash Sarnikar, directed, among other correspondence, a letter to the CFA Institute, requesting expanded permission to use CFA Institute intellectual property in India.

In 1995, the relationship between the parties began to sour when the CFA Institute ascertained that ICFAI was violating the License Agreement by marketing its version of the CFA program in the United States and Canada through written and online materials. Concerned that ICFAI's use of the CFA program in these countries could confuse consumers, the CFA Institute notified ICFAI that it was in violation of the License Agreement. As a result, on December 18, 1995, ICFAI agreed to recognize the CFA Institute's superior rights in the CFA mark and to cease using it in the United States and Canada (the "Settlement Agreement").

Unfortunately, the Settlement Agreement survived less than two years. In January 1997, suspecting that ICFAI was violating the Settlement Agreement, the CFA Institute terminated the License Agreement. A year thereafter, on January 13, 1998, ICFAI responded by notifying the CFA Institute by letter that it would no longer abide by the Settlement Agreement.

B.

As a result of the foregoing, the CFA Institute, on July 16, 1998, filed its Complaint against ICFAI in the Eastern District of Virginia, alleging trademark infringement and unfair competition under the Lanham Act, plus breach of contract. When

---

[7]The record contains a book-length prospectus on ICFAI titled "Let There Be Light: The Genesis of ICFAI." *See* J.A. 219-77. In this prospectus, ICFAI boasts of its relationship with the CFA Institute. In particular, the prospectus identifies the 1987 board meeting as evidence of the recognition that ICFAI has attained in the international marketplace.

ICFAI failed to appear in the proceedings, the district court, by its 1998 Order, entered a default judgment against ICFAI. The default judgment, inter alia, enjoined ICFAI from using the CFA mark, promoting employment opportunities for ICFAI charter-holders in the United States and Canada, and holding itself out as in any way affiliated with the CFA Institute.[8]

In its 1998 Opinion, the district court identified several of ICFAI's contacts with the CFA Institute in Virginia that supported the exercise of personal jurisdiction in the Commonwealth. From those facts, the court concluded that the CFA Institute's claims "arose out of conduct by ICFAI in the Commonwealth of Virginia"; that "ICFAI intentionally patterned its 'CFA Program' on the plaintiffs' well established program based in the Commonwealth of Virginia"; that ICFAI "sent representatives to the Commonwealth of Virginia to meet with [the CFA]"; and that "ICFAI representatives attended [CFA] Board meetings" and "had meetings" with CFA officers in Virginia. 1998 Opinion 15. Thus, the court concluded that it possessed personal jurisdiction over ICFAI under Virginia's long-arm statute.[9] Additionally, the court observed that ICFAI had waived any objection to personal jurisdiction by directing correspondence to the court.[10]

---

[8]The district court, by its 1998 Opinion, also assessed the Complaint. In so doing, the court observed that the CFA Institute had valid intellectual property rights in its marks, that ICFAI had infringed such rights, and that the CFA Institute had been irreparably harmed by ICFAI's conduct.

[9]The Virginia long-arm statute, codified at Virginia Code section 8.01-328.1, specifies ten enumerated bases by which a court may exercise personal jurisdiction over a defendant. It provides, in pertinent part, that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." Va. Code § 8.01-328.1(A)(1).

[10]Although ICFAI failed to appear in the 1998 proceedings, it corresponded directly with the district court through a series of five letters. On August 27, 1998, ICFAI's then-Registrar, P. Venkata Rao, forwarded a letter to the court contesting the merits of the Complaint and asking for an

More than eight years after the 1998 Order, on December 22, 2006, ICFAI appeared before the district court and requested it to reopen the proceedings and vacate the default judgment. ICFAI sought such relief under Federal Rule of Civil Procedure 60(b)(4), claiming that the default judgment was void because the court lacked personal jurisdiction when it was entered. In support of its Rule 60(b)(4) motion, ICFAI maintained that Indian currency regulations had prevented it from retaining counsel in 1998, and it was thus unable to timely contest the Complaint. On May 8, 2007, observing that it "appear[ed] that the Court lacked personal jurisdiction at the time default judgment was entered," the court granted ICFAI's Rule 60(b)(4) motion and vacated the 1998 Order. Relief Order.[11]

---

extension of time to file an answer. Rao asserted in his letter that ICFAI was unable to appear before the court because then-existing Indian currency regulations prohibited the exchange of Indian for American money, which prevented ICFAI from hiring counsel in the United States. Then, on September 22 and 25, 1998, Rao again wrote to the court, contesting the CFA Institute's proposed findings of fact and conclusions of law, and again requesting additional time to respond to the Complaint.

After entry of the 1998 Order, ICFAI continued to correspond with the court in November and December 1998 through its Registrar, contesting the CFA Institute's application for costs and attorneys' fees. On this issue, the court agreed with ICFAI and denied the CFA Institute's fee application, finding that ICFAI had not acted in bad faith and that this was not an "exceptional case" as defined by the Lanham Act. *See Inst. of Chartered Fin. Analysts v. Inst. of Chartered Fin. Analysts of India*, No. 3:98-cv-00417 (E.D. Va. Dec. 15, 1998). In 2007, the court struck the letters from the record by its Reinstatement Opinion.

[11]Pursuant to Rule 60(b)(4), a party is entitled to seek relief from a final judgment by showing that "the judgment is void." Rule 60(b) specifies six reasons for relief, all of which must be made "within a reasonable time." With respect to Rule 60(b)(1) through (b)(3), a "reasonable time" must be a period of time within one year of the entry of judgment. The one-year restriction does not apply, however, to relief sought under Rule 60(b)(4) through (b)(6). Although the CFA Institute challenged whether ICFAI's motion was reasonable, the district court rejected this challenge *sub silencio* when it granted Rule 60(b)(4) relief. There is no challenge to reasonableness or the eight-year delay being asserted in this appeal.

On May 23, 2007, the CFA Institute requested that the district court reconsider its Relief Order and reinstate the 1998 Order. This request was predicated on two separate grounds. First, the CFA Institute contended that, pursuant to Federal Rule of Civil Procedure 12(h)(1), ICFAI had waived its objection to personal jurisdiction by virtue of the five letters it submitted to the court in 1998. Second, the CFA Institute asserted that, even if ICFAI's contacts with Virginia failed to satisfy Virginia's long-arm statute, its contacts with the United States as a whole warranted the court's exercise of personal jurisdiction under Rule 4(k)(2).[12]

Three months later, on September 4, 2007, the district court filed its Reinstatement Opinion and Order, reinstating the 1998 Order.[13] The Reinstatement Opinion summarized the procedural posture of the case, explaining that the court, in making its Relief Order, had "found merit in [ICFAI's] arguments and found that it lacked personal jurisdiction over [ICFAI] in 1998." Reinstatement Opinion 1. The court then addressed the CFA Institute's contentions, first concluding that the waiver argument was "without merit." *Id.* at 2. Although a party may waive its objection to personal jurisdiction under Rule 12(h), the court explained, the party does not waive an objection to jurisdiction by failing to respond or appear. In these proceedings, it was "undisputed that [ICFAI] neither filed any responsive pleadings nor made a general appearance." *Id.* And, the court observed, "the letters written by [ICFAI] to the Court were deemed improper and stricken from the record." *Id.* Thus, it found no basis from which to

---

[12]Pursuant to Rule 4(k)(2), "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant" in the following circumstance: "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

[13]On May 25, 2007, ICFAI filed a motion to dismiss the Complaint for lack of personal jurisdiction. The court denied that motion in the Reinstatement Order.

conclude that ICFAI had waived an objection to personal jurisdiction or had submitted to such jurisdiction in these proceedings.

The district court, however, agreed with the CFA Institute's Rule 4(k)(2) contention. In contrast to the extensive findings made in the 1998 Opinion, the Reinstatement Opinion made a more limited assessment of the facts underlying the court's jurisdictional analysis. By the Reinstatement Opinion, the court observed that, "the parties, at a minimum, agree" to the following:

> [A]s of 1995 [ICFAI's] then executive director, Subhash Sarnikar: (1) registered a corporation on behalf of [ICFAI] in California; (2) made the decision to let that registration expire; and (3) had a relationship with Transworld University, a California entity. In addition to these California contacts, (4) an [ICFAI] representative visited Virginia in 1984, although Defendant avers no business was conducted; (5) an [ICFAI] representative attended a [CFA Institute] board meeting in Virginia in 1987; (6) [ICFAI] corresponded and collaborated with [the CFA Institute] over an extended period; and (7) the entities are parties to a 1995 Settlement Agreement.

Reinstatement Opinion 3.[14] The court thus concluded that ICFAI's contacts with the United States as a whole support a finding of personal jurisdiction under Rule 4(k)(2), and it reinstated the 1998 Order.

ICFAI has timely appealed, contending that the district

---

[14]In relating that "the parties, at a minimum, agree" to this listing of facts, the court necessarily found the parties had stipulated to them. Notably, the latter four of the seven stipulations, which the Reinstatement Opinion identifies as (4) through (7), specify ICFAI contacts with the CFA Institute in Virginia.

court erred in entering the Reinstatement Order. Put succinctly, it contends that the court misapplied Rule 4(k)(2) and erred in concluding that it possessed personal jurisdiction over ICFAI.

## II.

We assess de novo whether the district court possessed personal jurisdiction over the defendant in this proceeding. *See Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Any relevant factual findings made by the court, however, are reviewed for clear error. *See New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Finally, a court of appeals is entitled to sustain the judgment of a lower court on any ground apparent from the record. *See Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (observing "the well-recognized authority of courts of appeals to uphold judgments of district courts on alternate grounds").

## III.

Before assessing the district court's ruling under Federal Rule of Civil Procedure 4(k)(2), we are obliged to first determine whether the district court possessed personal jurisdiction over ICFAI under the Virginia long-arm statute. Pursuant to Rule 4(k)(1)(A), a federal court assessing such a jurisdictional issue borrows and applies the applicable long-arm statute and governing principles from the forum state. *See* Rule 4(k)(1)(A) ("[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."). If the state's long-arm statute fails to authorize the court's exercise of personal jurisdiction, we must then — and only then — decide whether Rule 4(k)(2) is satisfied. *Cf. United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 37 (1st Cir. 1999) (analyzing personal jurisdiction

under relevant state long-arm statute before proceeding to Rule 4(k)(2) analysis). As explained below, we need not reach or address the Reinstatement Opinion's Rule 4(k)(2) analysis, because Virginia's long-arm statute authorizes the court's exercise of personal jurisdiction over ICFAI.

### A.

In order for a district court to exercise personal jurisdiction over a defendant pursuant to a state long-arm statute, two requirements must be satisfied. First, the forum state's long-arm statute must authorize the exercise of such personal jurisdiction. Second, if that authorization exists, the Due Process Clause of the Fourteenth Amendment requires that the defendant have sufficient minimum contacts with the forum state. *See Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).[15]

### 1.

In assessing whether Virginia's long-arm statute authorized the exercise of personal jurisdiction over ICFAI, we observe that the Commonwealth provides multiple bases for the exer-

---

[15]The applicable authorities governing these procedural issues recognize two types of personal jurisdiction: general and specific. General personal jurisdiction, on the one hand, requires "continuous and systematic" contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952). Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984); *see also ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) ("[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction."). In these proceedings, the CFA Institute does not contend that ICFAI was subject to general personal jurisdiction in Virginia, but only that it was subject to the Commonwealth's specific personal jurisdiction.

cise of personal jurisdiction. *See* Va. Code § 8.01-328.1. Here, the CFA Institute necessarily relies on the first of those ten bases, that ICFAI was "[t]ransacting any business" in Virginia. *Id.* at § 8.01-328.1(A)(1). Significantly, the state and federal courts have construed Virginia's long-arm statute as extending personal jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause of the Fourteenth Amendment. *See, e.g.*, *Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 512 S.E.2d 560, 562 (Va. 1999); *see also Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). Thus, we determine whether ICFAI was "[t]ransacting any business" with the CFA Institute under Virginia's long-arm statute by simply assessing whether ICFAI had sufficient "minimum contacts" with Virginia to comport with due process standards. In other words, if ICFAI's contacts with the CFA Institute in Virginia satisfy due process, then they also satisfy Virginia's long-arm statute. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396-97 (4th Cir. 2003) (recognizing that, in such circumstances, "our statutory inquiry merges with our constitutional inquiry").

2.

Turning to the due process analysis, the Supreme Court has recognized that a district court may exercise specific personal jurisdiction over a defendant only if the defendant has sufficient "minimum contacts" with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This "minimum contacts" test is premised on the concept that a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there. *See id.* at 319. Indeed, a single act by a defendant can be sufficient to satisfy the necessary "quality and nature" of such minimal contacts, although "casual" or "isolated" contacts are insufficient to trigger such an obligation. *Id.* at 317-18; *see also McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223-24 (1957) (recognizing jurisdiction on basis of defendant's

single contract with forum state). In order to be subject to a court's exercise of personal jurisdiction, a defendant must have "'fair warning that a particular activity may subject [him] to the jurisdiction of a foreign sovereign.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)). We have also observed that "the defendant's actions must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997).

Our precedent recognizes that a district court's exercise of personal jurisdiction over a particular defendant may rest upon limited contacts with the forum state, so long as due process is not offended. In *Hirschkop & Grad, P.C. v. Robinson*, we affirmed a default judgment against defendants who had been sued in Virginia by a Virginia law firm. *See* 757 F.2d 1499, 1503 (4th Cir. 1985). Even though the defendants' activities in Virginia were limited, we agreed with the district court that their contacts with the Commonwealth satisfied Virginia's long-arm statute and due process. *See id.* The jurisdictional facts were essentially these: the defendants met with the plaintiffs in Virginia to discuss the possibility of entering into a business relationship; the defendants retained the plaintiff; some disputes between the parties were settled over the telephone, with the defendant in Oregon and the plaintiff in Virginia; the defendants travelled to Virginia at least once to meet with the plaintiff to discuss disputed fees; and the defendants sent correspondence and mailed payments to the plaintiff in Virginia. *See id.* As explained below, the quality and nature of ICFAI's contacts with Virginia are akin to those of the *Hirschkop* defendants, and they likewise support the court's exercise of personal jurisdiction over ICFAI in Virginia.

## B.

### 1.

As explained above, the controlling inquiry in this appeal is whether exercising personal jurisdiction over ICFAI under Virginia's long-arm statute comports with the Due Process Clause. This jurisdictional analysis is necessarily fact-based, and we are first obliged to identify those facts supporting the exercise of personal jurisdiction over ICFAI in Virginia. Of ICFAI's seven stipulated contacts specified in the Reinstatement Opinion, four concern ICFAI's relationship with the CFA Institute in Virginia (collectively, the "Reinstatement Stipulations"):

- An "[ICFAI] representative visited" the CFA Institute in Virginia in 1984 (the "First Stipulation");

- An "[ICFAI] representative attended" a CFA Institute board meeting in 1987 in Virginia (the "Second Stipulation");

- ICFAI "corresponded and collaborated" with the CFA Institute over "an extended period" (the "Third Stipulation"); and

- The parties entered into the Settlement Agreement (the "Fourth Stipulation").

Reinstatement Opinion 3.[16] Although limited in number, the

---

[16]The 1998 Opinion contained more extensive findings than the district court recognized in the Reinstatement Opinion. Other than identifying the Reinstatement Stipulations (plus ICFAI's California contacts), the Reinstatement Opinion fails to specify or identify those findings of the 1998 Opinion that remain viable. The Reinstatement Order reinstated the 1998 Order, however, which was "based on" the findings and conclusions con-

Reinstatement Stipulations reveal the parties' substantial business relationship and establish that ICFAI purposefully transacted business with the CFA Institute in Virginia.

2.

In assessing whether the Reinstatement Stipulations satisfy Virginia's long-arm statute and due process, we apply a three-prong test. In terms of this dispute, we must consider the following: (1) the extent that ICFAI has purposefully availed itself of the privilege of conducting activity in Virginia, or otherwise invoked the benefits and protections of the laws of the Commonwealth; (2) whether the CFA Institute's claims arose out of ICFAI's Virginia-related activity; and (3) whether exercising personal jurisdiction would be "constitutionally reasonable." *Nolan*, 259 F.3d at 216 (internal quotation marks omitted); *accord New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 295 (4th Cir. 2005) (applying three-prong test); *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004) (same); *Carefirst*, 334 F.3d at 397 (same); *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (same).

a.

In applying the three-prong minimum contacts test, we first consider the extent to which ICFAI has purposefully availed itself of the laws of Virginia, or otherwise invoked the Commonwealth's benefits and protections. *See Nolan*, 259 F.3d at

───────────

tained in the 1998 Opinion. By the Reinstatement Order, the court specifically relied upon certain facts and conclusions made in the 1998 Opinion — such as those necessary to reinstate the default judgment — but did not specifically address others. As explained *infra*, regardless of the status of the findings made in the 1998 Opinion, the Reinstatement Stipulations are sufficient to support the court's exercise of personal jurisdiction over ICFAI under Virginia's long-arm statute. We are therefore content to rest our analysis on the Reinstatement Stipulations alone.

216. In view of the Reinstatement Stipulations, it is readily apparent that ICFAI purposefully transacted business with the CFA Institute in Virginia. Indeed, its contacts with Virginia were at least as substantial as those of the defendant in *Hirschkop*. With the First Stipulation, the district court recognized that ICFAI initiated contact with the CFA Institute in Virginia in 1984. That visit sparked ongoing business transactions, by which ICFAI repeatedly reached into Virginia to transact business with the CFA Institute, invoking the benefits and protections of Virginia law.[17] Furthermore, ICFAI continued to invoke those benefits and protections when it corresponded and collaborated with the CFA Institute over a period of approximately thirteen years. As such, ICFAI purposefully availed itself of the privilege of transacting business in the Commonwealth, and the first prong of the applicable minimum contacts test is satisfied.

b.

Second, we must assess whether the CFA Institute's claims in the Complaint arose out of ICFAI's Virginia-related business transactions. *See, e.g.*, *Nolan*, 259 F.3d at 216. Simply put, the 1984 visit to the CFA Institute in Virginia was the genesis of this dispute. The visit prompted the parties to enter into the License Agreement; ICFAI's subsequent infringement of the CFA Institute's rights under the License Agreement resulted in the Settlement Agreement (recognized by the Fourth Stipulation); and ICFAI's alleged breach of the Settlement Agreement resulted in this lawsuit. Thus, the Reinstatement Stipulations show a seamless series of business transactions from ICFAI's 1984 Charlottesville visit to the filing of the Complaint.

---

[17]Pursuant to applicable precedent, we are entitled to accord special weight to the fact that it was ICFAI that initiated contact with the CFA Institute in Virginia. *Cf. Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 451 (4th Cir. 2000) (concluding contacts insufficient in part because plaintiff initiated contractual relationship).

ICFAI's contacts with Virginia, however, included more than the 1984 visit alone. The Second Stipulation reveals that, in 1987, an ICFAI representative visited the CFA Institute in Charlottesville on at least one other occasion, reinforcing the conclusion that the claims in the Complaint arise out of ICFAI's actions directed toward Virginia. And the Third Stipulation supports that view. As the district court specified therein, ICFAI "corresponded and collaborated" with the CFA Institute over a period of several years, reinforcing the proposition that ICFAI's business transactions with the CFA Institute were substantial and ongoing. Indeed, the court's use of the word "collaborated" in the Third Stipulation describes an integrated relationship, in that to "collaborate" means to "work jointly on an activity, [especially] to produce or create something." *The New Oxford American Dictionary* 332 (2d ed. 2005). In sum, the Reinstatement Stipulations — to which "the parties, at a minimum, agree" — do not invoke images of isolated interaction. They instead reflect a purposeful effort by ICFAI to transact business with the CFA Institute in the Commonwealth. Thus, the CFA Institute's claims clearly arise out of ICFAI's Virginia-related activities.

c.

Finally, under the third prong of the minimum contacts test, we must assess whether the district court's exercise of jurisdiction over ICFAI under Virginia's long-arm statute would be "constitutionally reasonable." *Nolan*, 259 F.3d at 216 (internal quotation marks omitted). Generally, such an analysis ensures that litigation is not "'so gravely difficult and inconvenient'" as to place the defendant at a "'severe disadvantage in comparison to his opponent.'" *Id.* at 217 (quoting *Burger King*, 471 U.S. at 476). Furthermore, at least three other relevant factors — the burden on ICFAI, the interests of the Commonwealth as the forum state, and the CFA Institute's interests in obtaining relief — inform the reasonableness analysis. *See Nolan*, 259 F.3d at 217 (citing *Burger King*, 471 U.S. at 475); *see also Lesnick v. Hollingsworth & Vose*

*Co.*, 35 F.3d 939, 945-46 (4th Cir. 1994) (utilizing these factors). We will assess these factors in turn.

First, although we recognize that ICFAI's location in India may present unique challenges, *see Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987), ICFAI's being haled into court in Virginia is not, in these circumstances, particularly burdensome. As shown by these proceedings, ICFAI has been able to secure counsel to represent its interests, and its litigation burden is thus no more substantial than that encountered by other entities that choose to transact business in Virginia. More simply, ICFAI is not shielded from civil liability in Virginia because it is headquartered in India.

Furthermore, the inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there. *See Shaffer*, 433 U.S. at 218 (Stevens, J., concurring in judgment) (explaining that defendant's contacts with foreign sovereign "give[ ] rise to predictable risks"). And, in these circumstances, it was reasonably foreseeable to ICFAI that the CFA Institute might initiate a lawsuit in Virginia. The CFA Institute is a Virginia entity, and ICFAI had repeatedly reached into the Commonwealth to transact business with it. *See Indianapolis Colts v. Metro. Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 412 (7th Cir. 1994) (observing that defendant, in effect, "enter[s] the state in some fashion" when it infringes plaintiff's intellectual property (internal quotation marks omitted)). *But see World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (observing that "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause"). Although ICFAI may face challenges in defending against litigation in Virginia, its amenability to suit in the Commonwealth nevertheless comports with the requirements of due process. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("An individual injured in California need not go to Florida to seek redress from persons who,

though remaining in Florida, knowingly cause the injury in California.").

Second, in assessing the interests of the forum state, the Commonwealth clearly possesses a substantial interest in having this lawsuit adjudicated in Virginia. The CFA Institute, as a Virginia entity, possessed and pursued its Lanham Act and contractual claims against ICFAI in the Commonwealth. And Virginia has a valid interest in the resolution of the grievances of its citizens and businesses, particularly when they potentially involve issues of Virginia law. *See Lee v. Walworth Valve Co.*, 482 F.2d 297, 299 (4th Cir. 1973) (recognizing forum state's "paternal interest in the recovery by one of its citizens of appropriate compensation, if there is a substantive cause of action"); *see also McGee*, 355 U.S. at 223 (same); *cf. Fed. Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 661 (4th Cir. 1989) (recognizing that plaintiffs' status as non-forum-state residents weighs against recognizing jurisdiction). As a result, the Commonwealth's interests favor the court's exercise of personal jurisdiction over ICFAI.

Finally, the CFA Institute possesses a valid and substantial interest in having its legal rights recognized and vindicated. Since 1959, it has apparently carved out a market niche by cultivating the CFA mark and its products. As a result, the CFA Institute is entitled to utilize the judicial system in Virginia to protect and vindicate its intellectual property and other legal rights.

As this analysis reveals, the district court's exercise of personal jurisdiction over ICFAI was constitutionally reasonable. In such circumstances, ICFAI's transactions with the CFA Institute in the Commonwealth satisfy Virginia's long-arm statute and the Due Process Clause.

IV.

Pursuant to the foregoing, it is unnecessary to reach and address the Reinstatement Opinion's application of Rule

4(k)(2). We are satisfied to affirm the district court's judgment on the alternative ground that it possessed personal jurisdiction over ICFAI under Virginia's long-arm statute.

*AFFIRMED*