## Commonwealth *v*. Palace, Appellant.

Argued September 27, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Lee C. McCandless,* with him *John H. Marshall,* for appellant.

*Clyde S. Shumaker,* District Attorney, for appellee.

OPINION BY FINE, J., January 14, 1949:

Frank Palace, appellant, was convicted of setting up or establishing a gambling house contrary to § 605 of The Penal Code.[1] This appeal challenges the sufficiency of the evidence to sustain his conviction and embodies two questions. (1) Did the "Recreation Pool Room" at 138 North Main Street, Butler, Pa., constitute a gambling place? (2) If so, was the appellant connected with the setting up of such gambling place or did he "procure, permit, suffer and allow persons to collect and assemble for the purpose of playing at and staking or betting upon . . . (a) game or device of address or hazard for money or other valuable thing . . ."?

Police of the City of Butler, together with members of the Pennsylvania State Police, on March 7, 1947, conducted a raid in the said "Recreation Pool Room" or "Recreation Billiards." Appellant was not on the premises at the time of the raid. The police, upon entering

---

[1] Act of June 24, 1939, P. L. 872, 18 PS § 4605. Appellant was acquitted on a count charging him with traffic in lottery. (§ 604, Act of 1939, supra.)

the pool room, thoroughly searched the premises and found a large quantity of gambling paraphernalia. The "Recreation Pool Room" establishment was described as follows: to the right, upon entering, there was a cigar and candy counter, a cash register, two safes, a telephone with locked dial to prevent outgoing calls, a microphone and shelving in back with cupboard space below; in the rear beyond this entranceway, several pool tables were located; to the left of the entranceway, was a stairway to the basement. The basement was partitioned off into three rooms: the first room was occupied by a shoeshine stand at the foot of the stairs; the middle room contained a number of tables and chairs, a telephone and two Western Union Service ticker machines; the third room contained a small table, a chair and an intercommunicating system connected with the cigar and candy counter on the first floor.

Several of the police officers who participated in the raid testified they found a gray metal box locked in a safe on the first floor which contained a blank oilcloth billfold with $102.00 in paper money and $14.65 in silver money. In this gray metal box was also found a brown canvas bag containing approximately 300 numbers slips, bearing date March 6, 1947, one day prior to the raid. With the brown canvas bag was a sheet of white paper covered with numbers. Slips with numbers written on them and discarded tabs from tip cards were found in the basement. The tip cards were described as sheets with certain numbers on them, designated as "lucky numbers," and apparently used as information or "dope" sheets by numbers players. Slips with numbers were also found behind the venetian blinds in the front of the pool room and in a pillar of the nearby banister.

The fact that the Commonwealth could not show that the key men necessary for the purpose of operating a gambling house, such as writers, players, pick-up men, tabulators and bankers, were on the premises at the time of the raid nor prove that gambling was then being

conducted on the premises can be of no great comfort to appellant. There was ample evidence to justify the jury's verdict that "Recreation Pool Room" was a gambling place and that people did congregate there for the purpose of gambling. Unquestionably, a large amount of gambling equipment and used gambling materials were found on the premises. One police officer who had been in the establishment sometime prior to the raid replied affirmatively when asked whether he had seen any gambling at that time. An officer of the State Police testified on cross examination that he had observed writers, pick-up men, and pay-off men go in and out of this establishment: *Commonwealth v. Ciccone*, 85 Pa. Superior Ct. 316. Another police officer who participated in the raid entered the pool room at 11:40 p.m. He testified as follows: "And I answered the phone. Q. What took place when you answered the phone? A. A party called up and wanted to play a number. Q. What took place? A. The phone rang and I answered and the party on the line said to play a number for him and I said 'O.K.' . . . and I asked him what his name was and he told me his name and I wrote it down." See *Commonwealth v. Prezioso*, 157 Pa. Superior Ct. 80, 85, 41 A. 2d 350, 352, in which Judge HIRT said, inter alia: "A business establishment may be bound by the response of an unidentified person who answers the telephone on its behalf under presumptions which arise from the transaction of business by telephone. Swing v. Walker, 27 Pa. Superior Ct. 366. So also evidence is admissible of a telephone conversation in response to a call for a designated person at his place of business if the one answering claims to be the person called although his voice is not identified. Penna. Trust Co. v. Ghriest, 86 Pa. Superior Ct. 71. Similarly what is said by one initiating a call, by disclosing intimate knowledge, may so identify him and the person whom he calls as associates in the same enterprise as to make the whole conversation admissible. Of course

such evidence should be admitted with caution (because of the ease with which it may be counterfeited) and should not be received at all except when the circumstances rebut every suspicion that it may be spurious."

Other police officers testified that the establishment had a reputation as a gambling place; that it "is a known place of gambling"; that "The general reputation of the general public is that the 'Recreation Pool Room' is not a very nice place"; and that "It is generally known as a gambling place." Evidence of events occurring within the establishment and its reputation prior to the time covered by the indictment is competent: *Commonwealth v. Smith,* 89 Pa. Superior Ct. 190.

While it is true that the evidence is circumstantial in nature, that of itself will not prevent a conviction in such circumstances. ". . . 'A crime charged may be wholly sustained by circumstantial evidence where the circumstances proved are such as reasonably and naturally justify an inference of guilt of the accused, and are of such volume and quality as to overcome the presumption of innocence and satisfy the jury of the accused's guilt beyond a reasonable doubt.' " *Commonwealth v. Prezioso,* 157 Pa. Superior Ct. 80, 86, 41 A. 2d 350. Cf. *Commonwealth v. Marino,* 142 Pa. Superior Ct. 327, 16 A. 2d 314.

Appellant's complaint that there was no evidence associating him with Cavalero, the proprietor and lessee of the establishment, is likewise untenable. Cavalero, the proprietor, was illiterate and employed appellant to make out checks and pay the bills for the pool room. Appellant admits that he was a bookkeeper for the "Recreation Pool Room." Other evidence offered by the Commonwealth showed that he was in charge of the money, deposited the money in a bank in an account in his own name, drew checks on this account on a printed check form on which the name "Recreation Billiards" appeared; that he paid the rent; that he worked back of the counter, made change, and "seemed to be in

charge of the front part of the building." There was also evidence showing that he had a key to the premises and was in the establishment at all hours of the day and night, sometimes until five o'clock in the morning.

This assistance and participation in the enterprise was sufficient to make him a principal. Cf. *Commonwealth v. Manuszak,* 155 Pa. Superior Ct. 309, 311, 38 A. 2d 355. "The proprietor or manager or backer of a gambling establishment [may be convicted] . . . if with his knowledge, acquiescence and consent, express or implied, gambling is carried on upon premises in his possession, as owner or lessee, or under his management and control, by his associates or subordinates, who are likewise guilty, if they were present aiding and assisting in carrying on such gambling operations for him": *Commonwealth v. Carr,* 137 Pa. Superior Ct. 546, 10 A. 2d 133; *Commonwealth v. Pinkenson,* 138 Pa. Superior Ct. 485, 11 A. 2d 176. "The setting up of gambling devices, permitting persons to assemble in a place for the purpose of gambling and conducting a common gambling house are misdemeanors and all who aid and assist the proprietor in the commission of the offense, by such acts as standing guard at the door to protect the players against the intrusion of others, looking after the rake-off to which the house is entitled, and the performance of similar acts, are principals": *Commonwealth v. Ciccone,* 85 Pa. Superior Ct. 316, 319.

The evidence in this case amply supports the finding of the jury that this defendant had assisted in conducting a place in which persons were permitted to assemble for the purpose of gambling. The questions of fact were fairly submitted to the jury under instructions concerning which the appellant has no just cause for complaint.

The judgment of the court below is affirmed and defendant is directed to appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with its sentence or any part of it that had not been performed at the time the appeal was made a supersedeas.