58 A.3d 95

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Jeffrey S. CRUTTENDEN, Appellee.**

**Commonwealth of Pennsylvania, Appellant**

v.

**Stephen V. Lanier, Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 30, 2011.

Decided Dec. 17, 2012.

124

Hugh J. Burns Jr., Philadelphia, Jacqueline M. Carroll, West Chester, James L. McMonagle, Wilkes–Barre, Luzerne County District Attorney's Office, for Commonwealth of Pennsylvania.

Edward Michael Marsico Jr., Harrisburg, for Appellant Amicus Curiae, Pennsylvania District Attorney's Association.

Albert Joseph Flora Jr., Wilkes–Barre, Demetrius Fannick, for Stephen Lanier.

Joseph F. Sklarosky, Forty Fort, Joseph F. Sklarosky, Sr., Wilkes–Barre, for Jeffrey S. Cruttenden.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice McCAFFERY.

The issue in this discretionary appeal is whether a police officer violates the Pennsylvania Wiretapping and Electronic Surveillance Act ("Wiretap Act" or "Act"), 18 Pa.C.S. § 5701, *et seq.*, when he communicates directly with a suspect via cell phone text messages while pretending to be the suspect's accomplice.[1] Because an officer who directly communicates with another person by text-messaging is not eavesdropping or listening in on a conversation, but is himself engaging in the communication, and because for purposes of the Wiretap Act, it is irrelevant that an officer intentionally misrepresents his identity to the person with whom he communicates, we hold that no violation of the Wiretap Act occurred here pursuant to *Commonwealth v. Proetto*, 771 A.2d 823 (Pa.Super.2001) (holding that where an officer posing as an underage female communicates with a suspected sexual offender in a chat room on the internet, no violation of the Wiretap Act occurs because the officer is a direct party to the communication, and thus there has been no "interception" of a communication).[2] The Superior Court in the case *sub judice* distinguished the factual circumstances in *Proetto* from the factual circumstances here, and erroneously concluded that *"Proetto* is inapplicable." *Commonwealth v. Cruttenden*, 976 A.2d 1176, 1181 (Pa.Super.2009). The supposed factual dissimilarities perceived by that court, as will be explained *infra*, amount to distinctions without a difference and do not undermine the applicability of the *Proetto* rationale, which is dispositive. Accordingly, we reverse.

The facts in this matter are undisputed. In March 2007, Pennsylvania State Troopers stopped a vehicle bearing Arizona license plates for speeding along Interstate 80 in Clear-

1.  As this issue involves a pure question of law, our standard of review is *de novo* and our scope is plenary. *Commonwealth v. Miller*, 35 A.3d 1206, 1208 n. 4 (Pa.2012).

2.  This Court affirmed the *Proetto* decision on the basis of the Superior Court's opinion. *Commonwealth v. Proetto*, 575 Pa. 511, 837 A.2d 1163 (2003).

field County. During a consensual search of the vehicle, the troopers discovered 35 pounds of marijuana, methamphetamines, drug paraphernalia, a .45 caliber handgun, and a tracfone (a portable cell phone). Michael Amodeo, one of the occupants of the vehicle, told Trooper Richard Houk that he had been using the tracfone to communicate, via text messages, with Appellee Stephen Lanier regarding an exchange of the marijuana for $19,000. Trooper Houk obtained Amodeo's permission to use the tracfone and, posing as Amodeo, began text-messaging Lanier. Lanier, apparently suspicious, asked several questions to which only Amodeo knew the answers. Trooper Houk consulted with Amodeo and then correctly answered Lanier's questions. Satisfied that he was communicating with Amodeo, Lanier designated the parking lot of a Holiday Inn as a rendezvous spot to conduct the transaction.

Amodeo provided police with a physical description of Lanier and suggested Lanier's vehicle might bear New York license plates. Police arrived at the meeting place and approached Lanier and Appellee Jeffrey Cruttenden, who were located near and in, respectively, a parked vehicle with New York license plates. The police confirmed Lanier's identity, and when he refused to remove his hands from his pockets, police restrained him and recovered $20,000 cash from his coat pocket in a search incident to his arrest. The troopers obtained a search warrant for Appellees' vehicle, and discovered, among other things, a tracfone bearing the phone number that had been used to text-message Amodeo.

Appellees were subsequently charged with criminal attempt, criminal conspiracy, and dealing in proceeds of unlawful activities. Their cases were consolidated for trial, and each filed a pre-trial suppression motion alleging that the warrantless "interception" of the text messages was illegal and not subject to an exception under the Wiretap Act. Following an evidentiary hearing, the trial court granted the suppression motions, and the Commonwealth appealed to the Superior Court, pursuant to Pa.R.A.P. 311(d), arguing that resolution of the issue on appeal was controlled by the holding in *Proetto, supra,* and that under *Proetto,* reversal was required because no "inter-

ception" had taken place and thus, the Wiretap Act did not apply. The Superior Court disagreed, and affirmed the orders granting suppression, *see Cruttenden, supra,* and this Court granted allowance of appeal.

In *Proetto* an underage female reported to the Bristol Borough Police Department that the defendant had been engaging in sexually explicit communications with her in an internet chat room, expressing his desire to perform sexual acts with her despite knowing that she was underage. She also reported that the defendant had e-mailed her a photo of his erect penis. The underage female printed and delivered copies of the chat logs and photo to the police. A police detective told the female to cease all communication with the defendant but to alert police the next time she observed the defendant online.[3]

A few days later, the female contacted the detective when she saw "CR907" in a chat room. The detective entered the chat room, using the screen name "Kelly15F," and initiated conversation with the defendant, posing as a fifteen year-old girl. The defendant suggested she make a nude video of herself and send it to him and he would send her nude photographs of himself. The detective made a log of the chat room conversation, and the defendant was subsequently arrested and charged with criminal solicitation, corruption of minors and related offenses. The defendant filed a motion seeking suppression of his communications with "Ellynn" and "Kelly15F," claiming they had been acquired in violation of the Wiretap Act. *Proetto,* 771 A.2d at 826–827. The trial court denied the motions, the defendant was convicted of the charges, and he appealed to the Superior Court.

The Superior Court set forth the relevant provisions of the Wiretap Act[4] and addressed the applicability of the Act to the

3. The underage female had been connected to the internet under the screen name "Ellynn" and the defendant had used the cryptonym "CR907."

4. Section 5703 of the Wiretap Act provides as follows:

§ 5703. Interception, disclosure or use of wire, electronic or oral communications.

communications with "Ellynn" and "Kelly15F" separately. The court determined that the Act did not apply to the defendant's communications with "Ellynn" because those communications had not been intercepted by the police. *Id.* at 829. The court noted that those communications had been received and saved by the underage female who subsequently made hard copies of the messages and delivered them to police. *Id.* The court reasoned that no interception took place because the police's acquisition of the content of the communications had not been contemporaneous with transmission of the communications. *Id.* "In other words, when the conversation took place, it was not contemporaneously recorded by the government." *Id.* (*citing United States v. Turk*, 526 F.2d 654, 658–659 (5th Cir.1976)).

Additionally, the Superior Court determined that no violation of the Act had occurred by the female's saving, printing, and forwarding the communications because the communications had been made under the mutual consent exceptions contained in Section 5704 of the Act.[5] The court reasoned that

> Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:
> (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;
> (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or
> (3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.
> 18 Pa.C.S.A. § 5703.
> Additionally, the Act defines the word "intercept" as follows:
> "Intercept."—Aural or other acquisition of the contents of any wire, electronic or oral communication through the use of any electronic, mechanical or other device. The term shall include the point at which the contents of the communication are monitored by investigative or law enforcement officers.
> 18 Pa.C.S. § 5702.

5. Section 5704(4) provides, in relevant part, as follows:

"by the very act of sending a communication over the Internet, the party expressly consents to the recording of the message." *Id.* at 829.

Sending an e-mail or chat-room communication is analogous to leaving a message on an answering machine. The sender knows that by the nature of sending the communication[,] a record of the communication, including the substance of the communication, is made and can be downloaded, printed, saved, or, in some cases, if not deleted by the receiver, will remain on the receiver's system. Accordingly, [in] the act of [sending] an e-mail or communication via the Internet, the sender expressly consents by conduct to the recording of the message.

*Id.* at 829–830.

More importantly for purposes of the issue raised in the case *sub judice,* the *Proetto* opinion also determined that the Wiretap Act was inapplicable to the communications that were initiated and received by the detective posing as a fifteen-year-old female. The relevant portion of the opinion follows:

Next, we will address those communications received directly by Detective Morris while using the moniker "Kelly15F" in the chatroom. First, we find that the Pennsylvania Wiretapping and Electronic Surveillance Act is not applicable to these communications. There was no "interception" in this case. Detective Morris, as "Kelly15F" was the intended recipient of these communications. This Court has held that where a party receives information from a communication as a result of being a direct party to the communication, there is no interception. In *Commonwealth v. Smith,* 186 Pa.Super. 89, 140 A.2d 347 (1958), this Court was

§ 5704. **Exceptions to prohibition of interception and disclosure of communications**
It shall not be unlawful and no prior court approval shall be required under this chapter for:

\* \* \*

(4) A person, to intercept a wire, electronic or oral communication, where all parties to the communication have given prior consent to such interception.
18 Pa.C.S.A. § 5704(4).

presented with a situation in which after initiating a raid, officers answered incoming telephone calls. This testimony was admitted to establish that the [d]efendants were guilty of bookmaking and pool selling. Defendants contended that the Wiretapping Act was applicable to the case. This Court held the Act did not apply. The police action did not constitute an interception within the meaning of the Act because the conversations between the callers and the police officers were direct and the callers elected to talk to the officers who answered the phone.

This court also held, in *Commonwealth v. DiSilvio*, 232 Pa.Super. 386, 335 A.2d 785 (1975), that in a scenario similar to that in *Smith*, the receipt of information was not an interception under the Act. Rather,

> [t]he callers freely elected to talk to the officers, whether or not they were informed of the identity and occupation of the recipients of the calls. By receiving the communication directly over the means of transmission employed, the officers were in fact themselves parties to the call.

*Id.* [335 A.2d] at 787.

In this case, Detective Morris was a direct party to the communications from Appellant. There was no eavesdropping or wiretapping. Detective Morris obtained the information because he was a party to the communication. The fact that Detective Morris did not identify himself as a police officer is of no effect. The Wiretapping Act is not intended to prevent a telephone user from misrepresenting his or her identity. Appellant freely elected to talk to Detective Morris, regardless of whether he was informed of "Kelly15F"'s true identity. Therefore the communications received by Detective Morris should not be suppressed on the grounds that the means of obtaining this information was in violation of the Act.

*Proetto*, 771 A.2d at 831–832 (additional citations omitted).

Instantly, the Commonwealth's position on appeal was that pursuant to the holding in *Proetto*, there was no "interception" of the text messages between Appellee Lanier and Trooper

Houk posing as Amodeo because the trooper was a direct party to the communication and the misrepresentation of his identity was an irrelevant factor for purposes of the Wiretap Act. *Cruttenden, supra* at 1180–1181. The Superior Court disagreed and reasoned as follows:

[T]he Commonwealth's reliance on *Proetto* is misplaced because that case is distinguishable from the facts at hand. In *Proetto,* an underage female reported to police that the defendant was engaging in sexual innuendo with her and requesting naked photographs of her in an internet chat room, despite knowing that she was a minor. The juvenile forwarded her e-mail communications with the defendant to the police.

\*　　\*　　\*　　\*　　\*　　\*

... [A]rmed with the aforementioned information obtained from the minor, a detective posing as a 15–year old girl entered the chat room to make contact with the defendant. However, the detective did not use the same contact information as the minor complainant. The detective created a wholly separate computer profile and initiated contact with the defendant. Our [c]ourt found that the detective was a direct party to the communication with the defendant, there was no eavesdropping or wiretapping, and the Wiretap Act was not intended to prevent misrepresentation of identity. As such, our [c]ourt found that these communications were not intercepted under the Wiretap Act. Such was not the case in this matter. Here, Officer Houk posed as Amodeo. Therefore, Amodeo was the intended recipient of the communications, not Officer Houk. As such, *Proetto* is inapplicable.

*Id.* at 1181 (citations omitted) (emphases added).

The Superior Court's attempts to distinguish the instant matter on the facts are unavailing. The supposedly dispositive factual distinction set forth by the Superior Court panel here was that in *Proetto,* the detective posed as "Kelly15F," and in the instant matter, the trooper posed as Amodeo. In essence, the court concluded that although the Wiretap Act

does not apply and is not violated in situations where a police officer misrepresents his or her identity as that of a fictional person while a direct party to a conversation, the Wiretap Act does apply and is violated in situations where a police officer misrepresents his or her identity as that of an actual person while a direct party to a conversation. The *Proetto* rationale made no such distinction. Indeed, the *Proetto* rationale was based on prior case law in which officers posed as actual bookmakers. *Proetto, supra* at 831–832 (*citing DiSilvio, supra,* and *Smith, supra* ). In both *DiSilvio* and *Smith,* officers involved in the raid of bookmaking operations answered telephone calls and, posing as the actual bookmakers, spoke with the callers. In both cases, cited with approval in *Proetto,* the Superior Court held that the Wiretap Act was not violated because the officers were deemed to be direct parties to the call.

Indeed, the underlying basis of the holding in *Proetto* was that no interception occurred and no eavesdropping or listening in on a conversation took place because the detective was a direct party to the communication. *Id.* at 832. That a police officer does not identify him- or herself, or misrepresents his or her identity, does not change the fact that he or she is a direct party to the conversation, and by virtue of being a direct party to the conversation, is deemed the intended recipient of the conversation under whatever identity the officer has set forth. *See id.* at 831 ("**Detective Morris,** as 'Kelly15F' **was the intended recipient** of these communications.") (emphasis added).

It is this facet of the *Proetto* rationale that the Superior Court has misapprehended instantly. *Cruttenden, supra* at 1181 (reasoning that "[h]ere, Officer Houk posed as Amodeo. Therefore, **Amodeo was the intended recipient** of the communications, not Officer Houk.") (Emphasis added). An officer is deemed the "intended recipient" of a phone communication in which the officer is directly involved, even under circumstances in which the officer shields or misrepresents his or her identity, because the caller elects to talk to the officer who answered the phone. *Proetto, supra* at 832 (*citing Smith,*

*supra* at 350). The applicability of the Act does not rest on whether the caller's presumption of the identity of the person answering the call is accurate. It makes no difference instantly that Trooper Houk posed as Amodeo; the fact which takes the case out of the purview of the Act is that Appellee Lanier elected to communicate with the person answering the call and that the communication was direct. Therefore, there was no eavesdropping or listening in, and no interception took place.

Accordingly, we reverse and remand for further proceedings consistent with this Opinion.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE and Justices SAYLOR and EAKIN join the opinion.

Justice BAER files a concurring opinion in which Justice TODD joins.

Justice BAER, concurring.

I agree with the Majority that there was no interception pursuant to the Wiretap Act when Trooper Houk communicated with a suspect via text messaging while pretending to be the suspect's accomplice. I write separately, however, to note my disagreement with the Majority's reliance on *Commonwealth v. Proetto*, 771 A.2d 823 (Pa.Super.2001), *aff'd per curiam*, 575 Pa. 511, 837 A.2d 1163 (2003), as I agree with the Superior Court that the case at hand is factually distinct from *Proetto*.

Preliminarily, the Pennsylvania Wiretapping Act criminalizes the interception, or "acquisition," of the contents of any wire, electronic, or oral communication. 18 Pa.C.S. § 5702–5703. We applied the Wiretap Act in *Proetto*, where the detective created a fictional online identity, "Kelly15F," and initiated communication with Proetto. Importantly, in *Proetto*, the communication was at all times directly between the detective and Proetto; there was no third party involved in the communication. Because there was no third party, there

134

was no interception of a communication occurring between Proetto and a third party. As the Superior Court in *Proetto* noted, in the opinion adopted by this Court, "Detective Morris, as 'Kelly15F' was the intended recipient of these communications." *Id.* at 831. Whether the detective assumed a fictional identity for purposes of initiating the communication is irrelevant because the two-way communication was only between the detective and Proetto.

Here, in contrast, and contrary to the Majority's conclusion, the text message communication was between the defendant (Stephen Lanier) and a third party (Michael Amodeo). Trooper Houk at no point was ever the "intended recipient" of Lanier's text messages, either as himself or through the adoption of a "fictional identity." It is because the communication was between defendant Lanier and Amodeo, a third party, and intercepted by Trooper Houk, that this case is distinct from *Proetto.*

While I see *Proetto* as factually distinguishable from the case at hand, I am, nevertheless, in a concurring posture because this case is more factually similar to *Commonwealth v. Smith,* 186 Pa.Super. 89, 140 A.2d 347 (1958) and *Commonwealth v. DiSilvio,* 232 Pa.Super. 386, 335 A.2d 785 (1975),[1] both of which involved police officers answering ringing telephones on the premises of a bookmarking operation during police raids. In each case, the callers asked for certain named individuals, and, when informed that those individuals were unavailable, proceeded to place bets. In both cases, the Superior Court found that the police officers' actions of answering the phones and talking to the callers did not constitute an interception pursuant to the relevant Pennsylvania anti-wiretapping statutes at the time of the incidents because the callers "freely elected" to talk to the person answering the phone, whether or not they were informed of the identity and

1. Both *Smith* and *DiSilvio* were favorably cited by the Superior Court in *Commonwealth v. Proetto,* 771 A.2d 823 (Pa.Super.2001), which our Court *per curiam* affirmed on the basis of the Superior Court's opinion. Thus, we have adopted the Superior Court's rationale employed in reaching its final disposition in *Proetto. See Commonwealth v. Tilghman,* 543 Pa. 578, 673 A.2d 898 (1996).

occupation of the recipients of the calls. By receiving the communication directly over the phone, the officers were in fact themselves "parties to the calls." *DiSilvio,* 335 A.2d at 787; *Smith,* 140 A.2d at 350.

Likewise, by answering Lanier's text messages to Amodeo, Trooper Houk here acted in the same manner as the police officers in *Smith* and *DiSilvio.* Lanier directly communicated with and "freely elected" to continue the conversation with the person answering the text messages.

Justice TODD joins this opinion.